| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| The X-Law Group, P.C.<br>George Panagiotou, Esq. (SBN 263172)<br>633 W. 5th Street, Suite 2687<br>Los Angeles, CA 90071<br>(213) 223-2232 - Telephone<br>(213) 226-4691 - Facsimile<br><br>☐ *Individual appearing without counsel*<br>☒ *Attorney for:* Creditors Gene Hammett and Action Seating, Inc. | |

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | |
| In re<br>  Pegazus Sports Marketing & Consultant, Inc.<br><br><br><br><br>                                          Debtor(s). | CHAPTER: 7<br><br>CASE NO.: 2:11-bk-24929<br><hr>DATE: 5/5/11<br>TIME: 9:30 a.m.<br>CTRM: 1539<br>FLOOR: 15 |

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (with supporting declarations)
**(MOVANT:** Gene Hammett and Action Seating, Inc. **)**

### (Action in Non-bankruptcy Forum)

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. **Hearing Location:**  ☒ **255 East Temple Street, Los Angeles**   ☐ **411 West Fourth Street, Santa Ana**
   ☐ **21041 Burbank Boulevard, Woodland Hills**   ☐ **1415 State Street, Santa Barbara**
   ☐ **3420 Twelfth Street, Riverside**

3. a. ☒ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and must appear at the hearing of this Motion.

   b. ☐ This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served:

      ☐ at the hearing      ☐ at least _____ court days before the hearing.

      (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

      (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court.

      (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time, and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009                                                                                    **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 2 of 8*    **F 4001-1M.NA**

| In re                                      (SHORT TITLE)<br>Pegazus Sports Marketing & Consultant, Inc. | CHAPTER: 7 |
|---|---|
| Debtor(s). | CASE NO.: 2:11-bk-24929 |

5.   If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated: 4/6/11

THE X-LAW GROUP, P.C.

*Print Law Firm Name (if applicable)*

GEORGE PANAGIOTOU, ESQ.

*Print Name of Individual Movant or Attorney for Movant*

*Signature of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*    **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 3 of  8*    **F 4001-1M.NA**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| Pegazus Sports Marketing & Consultant, Inc. | | |
| | Debtor(s). | CASE NO.: 2:11-bk-24929 |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (MOVANT:  Gene Hammett and Action Seating, Inc.                    )

1.   **The Non-bankruptcy Action:**  Movant moves for relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate with respect to the following pending lawsuit or administrative proceeding (the "Non-bankruptcy Action") in a non-bankruptcy forum:

    Case name: Bunevacz v. Action Seating, Inc., et al.
    Docket number: BC432901
    Court or agency where pending: Los Angeles County Superior Court, Central District, Stanley Mosk Courthouse

2.   **Case History:**

    a.   ☒  A voluntary ☐ An involuntary    petition under Chapter ☒ 7 ☐ 11 ☐ 12 ☐ 13
         was filed on *(specify date)*: 4/6/11

    b.   ☐  An Order of Conversion to Chapter    ☐ 7 ☐ 11 ☐ 12 ☐ 13
         was entered on *(specify date)*:

    c.   ☐  Plan was confirmed on *(specify date)*:

    d.   ☒  Other bankruptcy cases affecting this action have been pending within the past two years.  See attached Declarations.

    e.   For additional case history, see attached continuation page.

3.   **Grounds for Relief from Stay:**  Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Non-bankruptcy Action to final judgment in the non-bankruptcy forum for the following reasons:

    a.   ☒  The bankruptcy case was filed in bad faith specifically to delay, hinder or interfere with prosecution of the Non-bankruptcy Action.

    b.   ☐  The claim is insured.  Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor(s) or estate property.

    c.   ☐  Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

    d.   ☐  Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

    e.   ☒  The claims are non-dischargeable in nature and can be most expeditiously resolved in the non-bankruptcy forum.

    f.   ☒  The claims at issue arise under non-bankruptcy law and can be most expeditiously resolved in the non-bankruptcy forum.

    g.   ☒  Other reasons to allow the Non-bankruptcy Action to proceed are set forth in an attached Declaration.

4.   ☐  Movant also seeks annulment of the stay so that filing of the bankruptcy petition does not affect any and all of the enforcement actions that were taken after the filing of the bankruptcy petition in this case, as specified in the attached Declaration(s).

5.   **Evidence in Support of Motion:**  *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

    a.   ☒  Movant submits the attached Declaration(s) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

    b.   ☐  Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims set forth in Debtor's(s') Schedules.  Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _____.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 4 of* 8      F 4001-1M.NA

| In re                    (SHORT TITLE)<br>Pegazus Sports Marketing & Consultant, Inc. | CHAPTER: 7 |
|---|---|
| Debtor(s). | CASE NO.: 2:11-bk-24929 |

c.  ☐  Other evidence *(specify)*:

6.  ☐  **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order granting the following:**

1.  Relief from the stay to Movant (and its successors and assigns, if any) *(check boxes re all applicable relief requested)*:

    a.  ☒  Terminating the stay as to Debtor(s) and Debtor's(s') bankruptcy estate.

    b.  ☐  Annulling the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

    c.  ☐  Modifying or conditioning the stay as set forth in the attached continuation page:

2.  Allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to proceed to final judgment in the non-bankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against Debtor(s) or estate property.

3.  ☒  Additional provisions requested:

    a.  ☒  That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

    b.  ☒  That the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

    c.  ☒  That the Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

    d.  ☐  For other relief requested, see attached continuation page.

4.  If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: 4/6/11

Respectfully submitted,

Gene Hammett and Action Seating, Inc.
*Movant Name*

The X-Law Group, P.C.
*Firm Name of Attorney for Movant (if applicable)*

By: _____
*Signature*

Name:  George Panagiotou, Esq.
*Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

| In re (SHORT TITLE)<br>Pegazus Sports Marketing & Consultant, Inc. | CHAPTER: 7 |
|---|---|
| Debtor(s). | CASE NO.: 2:11-bk-24929 |

## DECLARATION RE ACTION IN NON-BANKRUPTCY FORUM
### (MOVANT: Gene Hammett and Action Seating, Inc.        )

I, George Panagiotou, Esq. _____, declare as follows:
*(Print Name of Declarant)*

1.    I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding the state court lawsuit, administrative proceeding, or other action *in* a non-bankruptcy forum ("Non-bankruptcy Action") that is the subject of this Motion because:

   a.    ☐    I am the Movant.

   b.    ☐    I am the Movant's attorney of record in the Non-bankruptcy Action.

   c.    ☐    I am employed by the Movant as *(state title and capacity)*:

   d.    ☒    Other *(specify)*:I am an attorney with the law firm which is counsel of record for movant in the non-bankruptcy action.

2.    I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Non-bankruptcy Action. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3.    The Non-bankruptcy Action at issue is currently pending as:

   Case name: Bunevacz v. Action Seating, Inc., et al.
   Docket number:BC432901
   Court or agency where pending:Los Angeles County Superior Court, Central District, Stanley Mosk Courthouse

4.    **Procedural Status:**

   a.    The causes of action pleaded in the non-bankruptcy forum are *(list)*:
   Breach of Contract; Fraud by False Promise; Fraud by Concealment; Fraud by Intentional Misrepresentation; Breach of Covenant of Good Faith and Fair Dealing

   True and correct copies of the pleadings filed before the non-bankruptcy forum are attached hereto as Exhibit    A   .

   b.    The Non-bankruptcy Action was filed on *(specify date)*:3/3/10

   c.    Trial or hearing began/is scheduled to begin on *(specify date)*:7/13/11

   d.    The trial or hearing is estimated to require the following number of court days *(specify)*:7

   e.    Other defendants to the Non-bankruptcy Action are *(specify)*:Jessica Rodriguez Bunevacz; see attached continuation page

5.    **Grounds for relief from stay:**

   a.    ☐    The claim is insured. The insurance carrier and policy number are *(specify)*:

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 6 of _8_*        **F 4001-1M.NA**

| In re                    (SHORT TITLE)<br>Pegazus Sports Marketing & Consultant, Inc.<br><br>                                           Debtor(s). | CHAPTER: 7<br><br>CASE NO.: 2:11-bk-24929 |
|---|---|

b.  ☒  The matter can be tried more expeditiously in the non-bankruptcy forum.

   (1)  ☒  It is currently set for trial on: 7/13/11

   (2)  ☐  It is in advanced stages of discovery and Movant believes that it will be set for trial by *(specify date)*:
       The basis for this belief is *(specify)*:

   (3)  ☒  The matter involves non-debtor parties who are not subject to suit in the bankruptcy court.  A single trial in the non-bankruptcy forum is the most efficient use of judicial resources.

c.  ☒  The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Non-bankruptcy Action.

   (1)  ☒  Movant is the only creditor (or the only substantial creditor) scheduled by the Debtor(s).

   (2)  ☒  The timing of the petition filing shows that it was intended to delay or interfere with the Non-bankruptcy Action based upon the following facts *(specify)*:

       Debtor first filed for bankruptcy on 2/11/2011.  The filing was on a Friday afternoon before a Monday scheduled deposition of a material witness.  Debtor failed to attend the initial 341 and also failed to appear for the continued 341. The bankruptcy case was dismissed on 4/04/2011. After the bankruptcy case was dismissed, notice to reinstitute the non-bankruptcy action was given on 4/05/2011. The next day, 4/06/2011, the debtor refiled for bankruptcy to delay the non-bankruptcy action.

   (3)  ☐  Debtor(s) does(do) not have a reasonable likelihood of reorganizing in this Chapter ☐ 11 ☐ 13   bankruptcy case based upon the following facts *(specify)*:

d.  ☒  For other facts justifying relief from stay, see attached continuation page.

---

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** _April 6_____, _2011_, **at** _Los Angeles, California_____ *(city, state)*.

George Panagiotou, Esq.
_____
*Print Declarant's Name*

                             _____
                             *Signature of Declarant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                                    **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 7 of 8*   **F 4001-1M.NA**

| In re (SHORT TITLE)<br>Pegazus Sports Marketing & Consultant, Inc. | CHAPTER: 7 |
|---|---|
| Debtor(s). | CASE NO.: 2:11-bk- 24929 |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 633 W. 5th Street, Suite 2686, Los Angeles, CA 90071

A true and correct copy of the foregoing document described as <u>Notice of Motion and Motion for Relief from Stay (Non-bankruptcy Action)</u> _____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>4/7/11</u> _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

United States Trustee (Los Angeles)
725 South Figueroa Street, 26th Floor
Los Angeles, CA 90071
ustpregion16.la.ecf@usdoj.gov

Elissa Miller, Trustee
Sulmeyer Kupetz
333 South Hope Street, 35th Floor
ca71@ecfcbis.com

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On <u>4/7/11</u> _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Peter Carroll
255 East Temple Street
Los Angeles, CA 90012
Suite 1534

Armen Shaghzo
Shaghzo & Shaghzo
100 West Broadway, Suite 540
Glendale, CA 91210

Pegazus Sports Marketing & Consultant, Inc.
10910 Wellworth Avenue, #209
Los Angeles, CA 90024

☑ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/7/11 | Anabel Rodriguez | _(signature)_ |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Order Granting Motion for Relief from Stay - Page _1_ of _1_          **F 4001-1O.ER**

| In re                                   (SHORT TITLE)<br>Pegazus Sports Marketing & Consultant Inc | CHAPTER:  7 |
|---|---|
| Debtor(s). | CASE NO.:  2:11-bk-24929 |

## (OPTIONAL)
## EXTRAORDINARY RELIEF ATTACHMENT
### (MOVANT:  Gene Hammett; Action Seating Inc.   )

*(This Attachment is the continuation page for Paragraph 3(c) of the foregoing Order.)*

Based upon evidence of efforts by Debtor(s) or others acting in concert with Debtor(s) to delay, hinder or defraud Movant by abusive bankruptcy filings, this Court further orders as follows:

1. ☒  This Order is binding and effective in any bankruptcy case commenced by or against the Debtor(s) for a period of 180 days from the hearing of the Motion.

2. ☒  This Order is binding and effective in any bankruptcy case commenced by or against any successors, transferees, or assignees of the above-named Debtor(s) for a period of 180 days from the hearing of the Motion
   - ☒  without further notice.
   - ☐  upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law.

3. ☐  This Order is binding and effective in any bankruptcy case commenced by or against any debtor(s) who claim(s) any interest in the Property for a period of 180 days from the hearing of the Motion
   - ☐  without further notice.
   - ☐  upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law.

4. ☒  This Order is binding and effective in any future bankruptcy case, no matter who the debtor(s) may be
   - ☒  without further notice.
   - ☐  upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law.

5. ☒  The Debtor(s) is/are hereby enjoined from transferring all or any portion of the Property for a period of 180 days from the hearing of the Motion except as may be authorized by further order of this Court, and any transfer in violation of this Order is void.

6. ☐  The Sheriff or Marshal may evict the Debtor(s) and any other occupant from the subject Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing of the Motion
   - ☐  without further notice.
   - ☐  upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law.

7. ☒  Other *(specify):*
   Defendants Pegazus Sports Marketing & Consultants Inc., and David Bunevacz in the Non Bankruptcy Action, Bunevacz v. Action Seating et al, be enjoined from filing future bankruptcies unless debtors show cause that filing is not in bad faith specifically to delay or interfere with the prosecution of the Non-Bankruptcy Action. Additionally, future debtors must attend 341 hearings for bankruptcy filings.

_____
Judge's Initials

---

This form is OPTIONAL TO THE JUDGE and may only be used if the judge to whom the case has been assigned allows such extraordinary relief to be requested by motion. Many judges require the filing of an adversary proceeding to obtain some or all of these forms of relief.

*Revised May 2004*                                                      **F 4001-1O.ER**

## Additional Defendants in Non-Bankruptcy Action – 2:11-bk-24929

Joseph Bunevacz

Pegazus Sports Marketing and Consulting, Inc.

Pegazus Sport Tours

Don Williams

Neil White

Mocra Ltd.

Exhibit A

1 | LAW OFFICES OF FILIPPO MARCHINO
FILIPPO MARCHINO (SBN 256011)
2 | 633 W. 5th Street, Suite 2629
Los Angeles, California 90071
3 | Telephone: 213.223.2232
Facsimile: 213.226.4691
4
MORIARTY LEYENDECKER, PC
5 | JAMES R. MORIARTY (Admitted Pro Hac Vice, TX SBN 14459700)
4203 Montrose, Suite 150
6 | Houston, TX 77006
Telephone: 713.528.0700
7 | Facsimile: 713.528.1390

8 | Attorneys for Defendant and Cross-Complainant ACTION SEATING,
INC. and Defendant and Cross Complainant GENE HAMMETT
9

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

NOV 3 0 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
KATHY MORALES

10 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11 | **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

12 | DAVID BUNEVACZ, an individual,

        Plaintiff,
13 |        vs.

14 | ACTION SEATING, INC., a corporation,
GENE HAMMETT, an individual and Does 1
15 | through 10,

16 |        Defendants.
    _____
17 | ACTION SEATING, INC. &
GENE HAMMETT
18 |
        Cross-Complainants,
19 |
        vs.
20 |
DAVID BUNEVACZ, an individual, JOSEPH
21 | BUNEVACZ, an individual, JESSICA
RODRIGUEZ BUNEVACZ, an individual,
22 | NEIL WHITE, an individual, PEGAZUS
SPORTS MARKETING AND
23 | CONSULTING INC , an entity of unknown
origins, PEGAZUS SPORTS MARKETING
24 | & CONSULTANTS, INC. , a California
entity, MOCRA LTD, a British Virgin Islands
25 | entity, PEGAZUS SPORT TOURS LTD, an
entity of unknown origins & ROES 1 through
26 | 50 inclusive,

27 |        Cross-Defendants.

28 |

CASE NO. BC432901

Assigned for all purposes to:
Hon. Daniel J. Buckley, Dept. 35

**DEFENDANTS' THIRD AMENDED
CROSS-COMPLAINT FOR:**

1. **BREACH OF CONTRACT**
2. **FRAUD BY FALSE PROMISE**
3. **FRAUD BY CONCEALMENT**
4. **FRAUD BY INTENTIONAL
   MISREPRESENTATION**
5. **UNJUST ENRICHMENT**
6. **BREACH OF COVENANT OF
   GOOD FAITH & FAIR DEALING**

Complaint Filed:      March 3, 2010
Discovery Cutoff:     April 11, 2011
Motion Cutoff:        April 26, 2011
Trial Date:           May 11, 2011

1         Cross-Complainants Action Seating, Inc. and Gene Hammett (collectively hereinafter

2 "Hammett") file this Third Amended Cross-Complaint and allege as follows:

3 <center>**PARTIES**</center>

4       1.     Cross-Defendant David Bunevacz is a citizen of the State of California and a

5 resident of the County of Los Angeles.

6       2.     Cross-Defendant, Pegazus Sports Marketing & Consultants, Inc., is a corporation

7 with its principal place of business at 23810 Spinnaker Court, Santa Clarita, in the County of Los

8 Angeles, State of California.

9       3.     Upon information and belief, Cross-Defendant Pegazus Sports Marketing and

10 Consulting Inc. is a corporation operating in the State of California and has an address of 14622

11 Ventura Blvd., Sherman Oaks, in the County of Los Angeles, State of California.

12       4.     Upon information and belief, Cross-Defendant Joseph Bunevacz is a citizen of the

13 State of California and a resident of the County of Los Angeles.

14       5.     Upon information and belief, Cross-Defendant Jessica Rodriguez Bunevacz is a

15 citizen of the State of California and a resident of the County of Los Angeles, and is wife to Cross-

16 Defendant David Bunevacz.

17       6.     Upon information and belief, Cross-Defendant Neil White is a British citizen and a

18 resident of the State of Hong Kong.

19       7.     Upon information and belief, Cross-Defendant MOCRA LTD is a British Virgin

20 Islands entity, with a principal place of business with ACT Trustees (BVI) Limited, 2nd Floor,

21 Abbott Building, Road Town, Tortola, the BVI.

22       8.     Upon information and belief, Cross-Defendant Pegazus Sport Tours LTD is a

23 corporation operating in the State of California.

24       8.     Cross-Complainant Action Seating, Inc. is a corporation with its principal place of

25 business in Georgia.

26       9.     Cross-Complainant Gene Hammett is a citizen of the State of Georgia.

27

28

<div style="float:left">LAW OFFICES OF FILIPPO MARCHINO<br>633 W. 5ᵗʰ Street, Suite 2600<br>Los Angeles, California 90071<br>Tel 213.223.2232 | Fax 213.226.4691</div>

<center>2</center>
<center>DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT</center>

10.    At all times mentioned herein, each cross-defendant was the agent and employee of each and all of the other cross-defendants and was acting in the course of such agency and employment.

11.    Cross-Complainants are currently unaware of the true names and capacities of the parties sued herein as ROES 1 THROUGH 50, inclusive, and therefore they sue them under such fictitious names as provided by California Code of Civil Procedure §474. Cross-Complainants are informed, believe and thereon allege, that each of the cross-defendants fictitiously named herein as ROE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and proximately caused the injuries and damages to Cross-Complainants as hereinafter alleged.

12.    Cross-Complainants will seek leave of Court to amend this Cross-Complaint when they learn of the true names and identities of the Roe Cross-Defendants

### JURISDICTION & VENUE

13.    This case arises out of a Purchase Agreement and series of addendums wherein Cross-Defendants David Bunevacz, Joseph Bunevacz, Pegazus Sports Marketing & Consulting, Inc., Pegazus Sports Marketing & Consultants, Inc., Pegazus Sport Tours LTD, Neil White and/or Mocra agreed to provide Hammett with tickets to the Vancouver Olympics.  The Purchase Agreement provides that any litigation arising out of the Purchase Agreement shall take place in the County of Los Angeles, and be subject to California law.

14.    This matter is properly filed in this Court of unlimited jurisdiction because Action Seating and Hammett's claims exceed $25,000.

### INTRODUCTION

15.    This is not a case, as David Bunevacz claims, that is analogous to a customer trying to leave a department store with a half-paid for designer suit.  It's a case of a seller who promised to acquire special order goods for a customer on a layaway plan, pocketed the customer's installment payments and then refused to deliver the goods or refund the customer's money.

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

1

## FACTS

2

### The 2008 Beijing Olympics

3      16.    Hammett first met David Bunevacz and his father, Joseph Bunevacz, in Beijing

4  shortly before the start of the 2008 Summer Olympics. Joseph Bunevacz told Hammett that he and

5  his son worked for Pegazus Sport Tours, the official ticket agency representing the Hungary and

6  Spain National Olympic Committees.

7      17.    Hammett explained to the Bunevaczes that he was looking for tickets to the Beijing

8  Olympics and David Bunevacz led Hammett to a room full of tickets for sale. Hammett purchased

9  more than two thousand tickets from the Bunevaczes over the span of the Beijing Olympics.

10  ### The 2010 Vancouver Olympics

11      18.    Before the Beijing Olympics ended, the Bunevaczes and Hammett began

12  negotiations for the Bunevaczes to sell Hammett tickets to the 2010 Winter Olympics in

13  Vancouver. The Bunevaczes repeatedly touted their alleged inside connections to and supply of

14  tickets from various National Olympic Committees. They repeatedly represented and reassured

15  Hammett that they would be able to obtain Vancouver Olympics tickets to sell to Hammett.

16      19.    Immediately following the Beijing Olympics, Hammett and David Bunevacz began

17  corresponding and finalizing the terms of David Bunevacz, Joseph Bunevacz and Pegazus Sport

18  Tours LTD's sale of Vancouver Olympic tickets to Hammett.

19      20.    In a letter dated September 9, 2008, David Bunevacz told Hammett that Hammett

20  had to wire $100,000 to David Bunevacz as a deposit before David Bunevacz could process

21  Hammett's ticket orders. Hammett complied and wired the money.

22      21.    Over the next several months, David and Joseph Bunevacz and Hammett continued

23  to negotiate and hammer out the terms of their deal.

24  ### Pegazus' Various Entity Names

25      22.    David and Joseph Bunevacz originally told Hammett that Hammett would be

26  contracting with Pegazus Tours LTD. Documents David Bunevacz sent Hammett in September

27  and October 2008 state that Pegazus Tours LTD would be providing Hammett with the tickets.

28

DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT

23.    However, the Purchase Agreement Hammett entered into is with an entity listed as Pegazus Sports Marketing and Consulting Inc. (hereinafter "Pegazus Consulting"). David Bunevacz signed the Purchase Agreement individually and as an authorized agent of Pegazus Consulting. David Bunevacz also provided Hammett with various corporate documents allegedly for Pegazus Consulting.

24.    However, throughout the parties' relationship, David Bunevacz also sent Hammett documents, including invoices and receipts confirming payment from Hammett, which list Pegazus Sports Marketing & Consultants Inc. (hereinafter "Pegazus Consultants") as the entity that sold Hammett tickets and accepted his money.

25.    It is unclear at this time exactly how David and Joseph Bunevacz used these various entities or entity names to steal money from Hammett and ruin the Olympics for numerous innocent individuals who purchased tickets from Hammett.

***Mocra***

26.    In early January 2009, Hammett advised David Bunevacz that his financing partners had backed out and that Hammett would not be able to go through with as large of a ticket deal as the parties had been contemplating. David Bunevacz explained that he had to pay his ticket sources the money they were allegedly demanding. To ensure that Hammett entered into a Purchase Agreement with David and Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, and Pegazus Sport Tours for the tickets, David Bunevacz told Hammett that David Bunevacz would try to obtain a loan. David Bunevacz told Hammett that David Bunevacz would use any funds he was able to obtain, along with money from Hammett and some of his own money, to secure the tickets from the ticket suppliers.

27.    David Bunevacz claimed that a financing company located in Hong Kong named Mocra Limited (hereinafter "Mocra") was willing to provide David Bunevacz with such a loan. David Bunevacz told Hammett that he had done business in the past with Mocra. David Bunevacz allegedly negotiated with Neil White at Mocra to arrange for said loans.

//

//

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232  |  Fax 213.226.4691

28.    David Bunevacz told Hammett that Mocra loaned him $250,000 in January 2009. David Bunevacz told Hammett he would take the $250,000 from Mocra and apply it to Hammett's payment of $628,865 CAN that was due to David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, and Pegazus Sport Tours by January 15, 2009. David Bunevacz told Hammett that Hammett needed to reimburse David Bunevacz for the $250,000 and that Bunevacz would then pay off Bunevacz' promissory note with Neil White and Mocra. Hammett paid back the principal and interest on this note within 30 days.

29.    David Bunevacz claimed that Mocra and Neil White gave him a second loan for $162,432 around March 2009.  Bunevacz claimed he applied these funds to Hammett's next payment due. Hammett paid back the principal and interest on these funds as well.

30.    Over the course of 2009, David Bunevacz told Hammett that David Bunevacz had obtained several additional loans from Mocra and Neil White. David Bunevacz routinely asked Hammett for money to pay off these loans and Hammett obliged. Any funds Hammett provided to David Bunevacz were credited to the amount Hammett owed for the Vancouver Olympics tickets.

**The Purchase Agreement**

31.    On January 21, 2009, Hammett entered into a Purchase Agreement with David Bunevacz and Pegazus Consulting.  David Bunevacz and Pegazus Consulting agreed to sell Hammett 7,984 tickets for $1,980,498 CAN.  The purchase price included a 20% commission to David Bunevacz and Pegazus.  The Purchase Agreement stated the following:

> BUYER [Hammett] agrees to purchase from Pegazus Sports Marketing and Consulting Inc. all of the tickets for the 2010 Olympic games to be hosted in British Columbia in February, 2010 as listed in 'Exhibit A" (the "Tickets") from SUPPLIER [Bunevacz, Pegazus Consulting and/or Pegazus Consultants] for a total price of $1,980,498 CAN (the "Purchase Price") which price represents the face value of the tickets plus a 20% commission.

//
//
//
//
//
//

32.    The purchase price also included a $73,000 "sponsorship fee for a 'VIP Trip'" for Hungarian officials to visit Canada.  Prior to entering into the Purchase Agreement, on October 30, 2008, David Bunevacz and Pegazus Sport Tours sent Hammett a letter which outlined a "recent excursion taken by several members of the National Olympic Committee" in Vancouver and Whistler.  David Bunevacz stated in the letter that the VIP trip cost a total of $112,318 which included 15 roundtrip airline tickets from Budapest to Vancouver, 9 deluxe rooms and/or suites at the Four Seasons in both Vancouver and Whistler and incidentals including "spa treatments, food, car rentals, mini bar and souvenirs."  The Purchase Agreement required Hammett pay for $73,000 of the alleged VIP trip cost.  The Purchase Agreement stated the following:  "BUYER [Hammett] also agrees to pay Pegazus Sports Marketing and Consulting, Inc. a sponsorship fee for a "VIP Trip" to Vancouver, the cost of which shall not exceed $73,000 USD (the "VIP Trip Costs")."

33.    Pursuant to the Purchase Agreement, Hammett was to pay the purchase price in four installments over time.  The Purchase Agreement acknowledged that Hammett had already satisfied the first installment payment of $150,000 (which included the "sponsorship fee") by wiring such funds prior to the execution of the Purchase Agreement.  The second and third installment payments were each to be $628,865 CAN.

34.    Hammett's fourth and final payment of $628,865 CAN or the remaining balance of the purchase price was due "on delivery" of the tickets.

35.    Through a series of emails and signed "addendums" over the course of 2009, David Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus Sport Tours agreed to provide Hammett with an additional 9,200 tickets.  The addendums stated that the

> "TICKET listings are an Addendum to Exhibit A in the contract 'Purchase Agreement for 2010 Winter Olympics' between Action Seating Inc and Pegazus Sports Marketing and Consulting and David Joseph Bunevacz executed on January 21, 2009.  All terms are the same as included in the contract except the ability for Pegazus to 'take back' any of these tickets.  Please refer to the 'Purchase Agreement' for all other the [sic] terms and conditions of this purchase.  All tickets are guaranteed no later than January 20th, 2010."

In Addendum A to the Purchase Agreement, David Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus Sport Tours guaranteed to deliver an additional 580 tickets to

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

1   Hammett for $61,120 CAN plus a 35% service fee of $21,392 CAN for a total of $76,736 USD. In

2   Addendum B to the Purchase Agreement, David Bunevacz, Pegazus Consulting, Pegazus

3   Consultants, and/or Pegazus Sport Tours guaranteed to deliver an additional 100 tickets to

4   Hammett for $11,120 CAN plus a 100% service fee of $11,120 CAN for a total of $20,683 USD.

5   In Addendum C to the Purchase Agreement, David Bunevacz, Pegazus Consulting, Pegazus

6   Consultants, and/or Pegazus Sport Tours guaranteed to deliver an additional 360 tickets to

7   Hammett for $76,535 CAN plus a 35% service fee of $26,787 CAN for a total of $96,090 USD. In

8   Addendum D to the Purchase Agreement, David Bunevacz, Pegazus Consulting, Pegazus

9   Consultants, and/or Pegazus Sport Tours guaranteed to deliver an additional 3,692 tickets to

10  Hammett for $811,855 CAN plus a 10% service fee of $81,186 CAN for a total of $830,528 USD.

11  In Addendum E to the Purchase Agreement, David Bunevacz, Pegazus Consulting, Pegazus

12  Consultants, and/or Pegazus Sport Tours guaranteed to deliver an additional 1,793 tickets to

13  Hammett for $411,810 CAN ($381,220 USD). In Addendum F to the Purchase Agreement, David

14  Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus Sport Tours guaranteed to

15  deliver an additional 1,621 tickets to Hammett for $400,570 CAN plus a 25% service fee of

16  $100,143 CAN for a total of $475,677. David Bunevacz sent Hammett an email on December 16,

17  2009 confirming that David Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus

18  Sport Tours would deliver an additional 911 tickets to Hammett for $156,155 CAN plus a 30%

19  service fee of $46,847 CAN for a total of $192,851 USD. All together, David Bunevacz, Pegazus

20  Consulting, Pegazus Consultants, and/or Pegazus Sport Tours agreed to provide Hammett with

21  more than 17,000 tickets to the Vancouver Olympics.

22      36.    The parties did not formally adjust the installment payments set out in the Purchase

23  Agreement despite the additional tickets. Instead, throughout the parties' relationship, David

24  Bunevacz would tell Hammett how much money David Bunevacz needed to forward to the alleged

25  ticket sources, when David Bunevacz needed the money and where Hammett should wire the

26  money.

27  //

28  //

DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT

*LAW OFFICES OF FILIPPO MARCHINO*
*633 W. 5th Street, Suite 2600*
*Los Angeles, California 90071*
*Tel 213.223.2232 | Fax 213.226.4691*

1  ***Hammett Pays Nearly Three Million Dollars***

2      37.    During the time period of September 2008 through January 12, 2010, Hammett

3  made payments totaling $2,941,381 for the tickets. Hammett made these payments via a series of

4  35 wire transfers sent to various accounts respectively held by David Bunevacz and his wife,

5  Jessica Bunevacz, by Pegazus Consulting, by Pegazus Consultants, and by Mocra. For each

6  payment, David Bunevacz gave Hammett wiring instructions. During this time period, David

7  Bunevacz also acknowledged receipt of and confirmed Hammett's payments. Neither David

8  Bunevacz nor anyone else at Pegazus Consulting, Pegazus Consultants, and/or Pegazus Sport

9  Tours ever told Hammett that he was in default of any payment obligation.

10  ***David Bunevacz, Joseph Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus***

11  ***Sport Tours Fail to Deliver A Single Ticket***

12      38.    On January 12, 2010, David Bunevacz told Hammett over the phone that all the

13  tickets David Bunevacz, Joseph Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or

14  Pegazus Sport Tours sold Hammett would be delivered and that Hammett owed $947,000 as the

15  final payment due upon delivery of the tickets.

16      39.    However, in the same conversation, David Bunevacz also told Hammett that there

17  was a "problem" with the tickets. David Bunevacz told Hammett that David Bunevacz owed

18  Mocra and Neil White $32,000 and that Mocra and Neil White considered David Bunevacz to be

19  in default of one of David Bunevacz' loans from Mocra and Neil White. David Bunevacz also told

20  Hammett that Mocra and Neil White had a lien on the tickets and would not "release" the tickets.

21  Hammett offered to pay the money David Bunevacz allegedly owed Mocra and Neil White to

22  ensure that Hammett got his tickets, but David Bunevacz told Hammett that David Bunevacz

23  needed to go to Hong Kong to deal with the issue in person.

24      40.    David Bunevacz told Hammett, who was already in Vancouver, to just stay in

25  Vancouver and that David Bunevacz would take care of the problem with Mocra and Neil White.

26  David Bunevacz reassured Hammett that his tickets would be delivered in Vancouver.

27  //

28  //

41.    Hammett had trouble reaching David Bunevacz over the next few days, but when they finally spoke, David Bunevacz told Hammett that Mocra and Neil White would not accept the $32,000. Hammett offered to pay even more money to ensure delivery of the tickets, but David Bunevacz told Hammett that Mocra and Neil White would not accept any amount of money. Bunevacz told Hammett that he had hired an attorney in Hong Kong to deal with Mocra and Neil White and resolve the situation.

42.    Hammett later learned that David Bunevacz, who had taken his wife Jessica Bunevacz with him to Hong Kong, left Hong Kong and went with his wife to Hawaii, apparently vacationing, in the midst of a crisis.

43.    While David Bunevacz was on the beach, Hammett was left in Vancouver without any tickets to provide to his customers. David Bunevacz, Joseph Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus Sport Tours, Neil White and Mocra's failure to deliver the tickets as promised destroyed the dreams of hundreds of totally innocent Olympics fans. Hammett currently faces lawsuits from some of the customers he was not able to deliver tickets to.

44.    David Bunevacz, Joseph Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus Sport Tours, Neil White and Mocra's actions have irreparably destroyed Hammett's reputation and his business. Hammett now faces the prospect of having to file for bankruptcy.

***Penalty for David Bunevacz, Joseph Bunevacz, Pegazus Consulting, Pegazus Consultants, Pegazus Sport Tours' Failure to Provide Hammett's Tickets***

45.    The Purchase Agreement contains a penalty provision which is triggered if the "SUPPLIER [David Bunevacz, Joseph Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus Sport Tours], due to its sole negligence or willful act does not deliver to the BUYER [Hammett] the exact event, quantity and category of the Tickets SUPPLIER offers in writing to BUYER in January 2010." The amount of the penalty depends on the number of tickets that were not delivered.

//

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT

46.    Because David Bunevacz, Joseph Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus Sport Tours, as a result of their sole negligence or willful act, failed to deliver a single ticket, the applicable penalty is as follows: "a full refund of the value of the [t]ickets the SUPPLIER fails to deliver (being the face value of such ticket(s) plus the 20% commission), plus the Handling Fee . . ." The Handling Fee for a failure to deliver "more than 25% of the originally confirmed ticket order" is defined as "200% of the face value of the Tickets the SUPPLIER failed to deliver."

47.    The more than 17,000 tickets David Bunevacz, Joseph Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus Sport Tours, Neil White and Mocra failed to provide to Hammett had a face of $3,579,580 CAN and commissions of $925,754 CAN. The Handling Fee for failing to deliver the tickets (200% of the face value) is $7,159,160 CAN. Thus, the total penalty for David Bunevacz, Joseph Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus Sport Tours, Neil White and Mocra's failure to deliver the tickets is $11,664,494 CAN.

**Purchase Agreement Provides for Payment of Attorneys' Fees.**

48.    The Purchase Agreement states that

"[i]f any dispute between the Parties results in litigation or arbitration, the prevailing party in the dispute will be entitled to recover from the other party all reasonable attorneys' fees, costs, and expenses of enforcing any right of the prevailing party."

David Bunevacz, Joseph Bunevacz, Pegazus Consulting, Pegazus Consultants, and/or Pegazus Sport Tours, Neil White and Mocra's failure to deliver a single ticket, refusal to refund any of Hammett's money, and decision to sue Hammett and Action Seating, Inc. has caused Hammett to sustain considerable attorneys' fees.

//

//

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5ᵗʰ Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

1

## FIRST CLAIM FOR RELIEF

2 (For Breach of Contract – against David Bunevacz, Joseph Bunevacz, Pegazus Sports

3 Marketing and Consulting Inc., Pegazus Sports Marketing & Consultants, Inc., Pegazus

4 Sport Tours LTD, Neil White, and Mocra Limited)

5     49.    Hammett repeats, re-alleges, adopts and incorporates each and every allegation

6 contained in Paragraphs 1 through 48, inclusive, as though fully set forth herein.

7     50.    As previously alleged, in 2009 David Bunevacz, Joseph Bunevacz, Pegazus

8 Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White, and Mocra Limited

9 agreed to sell Hammett more than 17,000 Vancouver Olympic tickets.

10     51.    In reliance upon the terms of David Bunevacz, Joseph Bunevacz, Pegazus

11 Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White, and Mocra Limited's

12 agreement to sell such tickets, Hammett paid David Bunevacz, Joseph Bunevacz, Pegazus

13 Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White, and Mocra more than

14 $2.9 million.

15     52.    In January 2010, David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or

16 Pegazus Consultants, Pegazus Sport Tours, Neil White, and Mocra failed to deliver Hammett a

17 single ticket.

18     53.    Hammett performed his obligations under the Purchase Agreement and additional

19 ticket agreements except insofar as his obligations were excused or he was prevented from

20 performing.

21     54.    The Purchase Agreement states that if a dispute arises, the prevailing party is

22 entitled to recover from the other party all "reasonable attorneys' fees, costs, and expenses."

23

24 //

25 //

26 //

27 //

28 //

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

55.     The Purchase Agreement also includes a penalty provision for Bunevacz, Pegazus Consulting and/or Pegazus Consultants' failure to deliver the tickets. The penalty is equivalent to the face value of the undelivered tickets plus the commission plus a handling fee equal to 200% of the face value of the undelivered tickets. The total penalty for David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White, and Mocra Limited's failure to deliver the tickets is $11,664,494 CAN.

56.     As a result of the material breaches alleged above, Hammett has suffered damages of at least $2,941,381 plus $11,664,494 CAN plus attorneys' fees, costs and expenses.

## SECOND CLAIM FOR RELIEF

**(For Fraud by False Promise – against David Bunevacz, Joseph Bunevacz, Pegazus Sports Marketing & Consulting, Inc., Pegazus Sports Marketing & Consultants, Inc., Pegazus Sport Tours LTD, Neil White, and Mocra)**

57.     Hammett repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 56, inclusive, as though fully set forth herein.

58.     As alleged above, David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White, and Mocra misrepresented to Hammett that they could, would, and did actually obtain the more than 17,000 Vancouver Olympic tickets they sold to Hammett.

59.     David Bunevacz and Joseph Bunevacz promised Hammett that they had inside connections with various National Olympic Committees that would provide David and Joseph Bunevacz with tickets to the Vancouver Olympics. Hammett contracted with David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra based on David and Joseph Bunevacz' repeated representations of their ability to obtain the tickets.

//
//

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

13

60.    David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra initially promised to sell Hammett nearly 8,000 tickets in January 2009. Over the course of 2009, David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra promised that they could obtain an additional 9,200 tickets from various National Olympic Committees to sell to Hammett. David and Joseph Bunevacz repeatedly reassured Hammett that David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White, and Mocra could and would deliver these tickets to Hammett.

61.    From September 2008 to January 10, 2010, David Bunevacz told Hammett how much money David Bunevacz needed to forward to the alleged ticket sources, when David Bunevacz needed the money and where Hammett should wire the money. David Bunevacz promised Hammett that the timing and amounts of these payments were dictated by David Bunevacz' alleged ticket sources. David Bunevacz promised Hammett that he was using Hammett's funds to pay these alleged ticket sources for Hammett's tickets. Instead, on information and belief, David Bunevacz was misappropriating these funds and using the funds for his own benefit.

62.    David Bunevacz also promised Hammett that he had obtained two loans from Mocra and that David Bunevacz sent these funds to David Bunevacz' ticket sources for Hammett's tickets. David Bunevacz told Hammett that Mocra loaned Bunevacz $250,000 in January 2009 and another $162,432 around March 2009. David Bunevacz told Hammett that Hammett needed to reimburse David Bunevacz for the loans he allegedly obtained from Mocra. David Bunevacz never obtained such loans. Instead, on information and belief, Mocra is simply a legal fiction David Bunevacz and Neil White created to help defraud Hammett out of millions.

//
//
//
//

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

63.   David Bunevacz also told Hammett that Hammett needed to pay for a portion of a "VIP trip" for David Bunevacz' alleged inside connections, Hungarian officials, to visit Canada in October 2008.  David Bunevacz provided Hammett with an invoice for the trip which allegedly cost more than $112,000 and told Hammett that his pro rata portion of the trip was $73,000.  David Bunevacz promised Hammett that the trip was necessary for David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra's business relationship with the government officials and for David Bunevacz' ability to obtain the tickets he sold to Hammett.  On information and belief, this alleged "VIP trip" with Hungarian officials never actually occurred.  Instead, David Bunevacz and his father, Joseph, enjoyed the trip and pocketed Hammett's money.

64.   Based on David Bunevacz' representations, Hammett wired David Bunevacz, Pegazus Consulting, Pegazus Consultants and/or Mocra more than $2.9 million.

65.   David and Joseph Bunevacz' promises, among others, to obtain more than 17,000 tickets to the Vancouver Olympics from Olympic insiders and to use funds David Bunevacz allegedly obtained from Mocra and Neil White to pay the ticket supplier, were critical to Hammett's decision to enter into the Purchase Agreement and addendums with David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra.  Had Hammett known the true facts he would not have entered into the Purchase Agreement and addendums with David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra.

66.   David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra never intended to perform these promises at the time they were made.  David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra knew when they entered into the Purchase Agreement and addendums that they did not have such tickets, would never obtain them, and had no intention of ever providing Hammett with such tickets.

//

//

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

15

DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT

67.    David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra also knew that Hammett paid for $73,000 worth of a "VIP trip" that did not take place with Hungarian officials as David Bunevacz promised and that David Bunevacz had not actually obtained any loans that David Bunevacz was allegedly using to pay the alleged ticket suppliers for Hammett's tickets as David Bunevacz promised.

68.    David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra made these promises with the intention of having Hammett rely upon them in furtherance of the parties' business relationship, for the sole purpose of defrauding Hammett out of millions. At the time that David Bunevacz, Joseph Bunevacz, Pegazus Consulting and Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra made the promises identified above, they knew they were false. The representations were made intentionally in an effort to induce Hammett to enter into the Purchase Agreement and addendums and to cause Hammett to provide David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra with substantial sums of money.

69.    Hammett reasonably, justifiably, and detrimentally relied upon the promises made by David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra and as a result, entered into the Purchase Agreement and addendums and paid millions of dollars to David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra.

70.    David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra did not perform the promised acts. David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra failed to deliver a single ticket to Hammett and refused to refund Hammett's money.

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

71.     Hammett was harmed as a result of the false promises made by David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra because he was defrauded out of millions of dollars.

72.     Hammett's reliance on the promises made by David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra caused harm to Hammett.

73.     Hammett has been damaged in an amount of at least $2,941,381.

74.     As a result of the fraud perpetrated by David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra Hammett is also entitled to an award of exemplary damages against David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra.

## THIRD CLAIM FOR RELIEF

**(For Fraud by Concealment – against David Bunevacz, Joseph Bunevacz, Pegazus Sports Marketing & Consulting, Inc., Pegazus Sports Marketing & Consultants, Inc., Pegazus Sport Tours LTD, Neil White and Mocra Limited )**

75.     Hammett repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 74, inclusive, as though fully set forth herein.

76.     David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White, Mocra and Hammett were business partners. As a result of that relationship, each party to the relationship was a fiduciary of each other party and, as a result, owed a duty to act in the best interests of those other parties.

//
//
//
//
//
//

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

17

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232  |  Fax 213.226.4691

77.    David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra concealed material facts known or accessible only to David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra. These facts included, among others, that the alleged Mocra loans never existed, that the VIP trip did not happen as Bunevacz stated/was never going to happen, and that David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra had no intention of ever providing tickets to Hammett as they guaranteed.

78.    As alleged above, in January 2010, David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra failed to deliver a single ticket to Hammett and thus, deprived him of the benefit of their pre-existing contractual relationship.

79.    David Bunevacz also told Hammett that Hammett needed to pay for a portion of a "VIP trip" for David and Joseph Bunevacz' alleged inside connections, Hungarian officials, to visit Canada in October 2008. David Bunevacz claimed that the trip, which included airfare, luxury hotel rooms and spa treatments, cost more than $112,000 and that Hammett's pro rata portion of the trip was $73,000. David Bunevacz told Hammett that the trip was necessary for David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra's business relationship with the government officials and for David and Joseph Bunevacz' ability to obtain the tickets they sold to Hammett. On information and belief, this alleged "VIP trip" with Hungarian officials never actually occurred. Instead, David Bunevacz and his father, Joseph, enjoyed the trip and pocketed Hammett's money.

//
//
//
//
//

DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT

80.     David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra intended to deceive and defraud Hammett by intentionally concealing the true facts as known only by David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra. These concealed facts included, among others, the intent to purposefully dishonor the preexisting agreements to provide tickets, having Hammett pay for a trip which did not take place as Bunevacz claimed and by having Hammett reimburse David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and/or Mocra for alleged loans from Mocra which never existed.

81.     Hammett was unaware of the true facts and would not have entered into the contract nor made any payments to David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra. As alleged hereinabove, Hammett reasonably, justifiably, and detrimentally relied upon the promises made by David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra.

82.     Hammett was harmed as a result of these deceptions. David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra's deception caused harm to Hammett by defrauding him out of millions.

83.     Hammett has been damaged in an amount of at least $2,941,381.

84.     As a result of the fraud perpetrated by David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra, Hammett is also entitled to an award of exemplary damages against David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra.

//
//
//
//

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5ᵗʰ Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232  |  Fax 213.226.4691

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

## FOURTH CLAIM FOR RELIEF

**(For Fraud by Intentional Misrepresentation – against David Bunevacz, Joseph Bunevacz, Pegazus Sports Marketing & Consulting, Inc., Pegazus Sports Marketing & Consultants, Inc., Pegazus Sport Tours LTD, Neil White and Mocra Limited)**

85.   Hammett repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 84, inclusive, as though fully set forth herein.

86.   As stated hereinabove, David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra made numerous false representations of material facts.

87.   David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra knew the representations were false at the time they were made.

88.   David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra made the representations with the intent to defraud Hammett.

89.   Hammett was unaware of the falsity of the representations, and reasonably, justifiably and detrimentally relied upon the representations.

90.   As a result of the reliance upon the truth of the representations, Hammett suffered damages of at least $2,941,381.

91.   As a result of the fraud perpetrated by David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra, Hammett is also entitled to an award of exemplary damages against Bunevacz, Pegazus Consulting and/or Pegazus Consultants.

//

//

//

//

DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

## FIFTH CLAIM FOR RELIEF

### (For Unjust Enrichment – against David Bunevacz, Joseph Bunevacz, Jessica Rodriguez Bunevacz, Pegazus Sports Marketing & Consulting, Inc., Pegazus Sports Marketing & Consultants, Inc., Pegazus Sport Tours LTD, Neil White and Mocra Limited)

92.    Hammett repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 91, inclusive, as though fully set forth herein.

93.    Hammett paid David Bunevacz, Joseph Bunevacz, Jessica Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra Limited $2,941,381 for approximately 17,000 Vancouver Olympic tickets.

94.    David Bunevacz, Joseph Bunevacz, Jessica Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra Limited failed to deliver a single Vancouver Olympic ticket to Hammett.

95.    David Bunevacz, Joseph Bunevacz, Jessica Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra Limited refuse to refund Hammett's nearly three million dollars.

96.    By reason of the aforementioned conduct David Bunevacz, Joseph Bunevacz, Jessica Bunevacz, Pegazus Consulting and/or Pegazus Consultants, Pegazus Sport Tours, Neil White and Mocra Limited have become unjustly enriched in the amount equal to $2,941,381, or such other amount as may be proven at trial.

## SIXTH CLAIM FOR RELIEF

### (For Breach of Covenant of Good Faith and Fair Dealing – By David Bunevacz, Joseph Bunevacz, Pegazus Sports Marketing & Consulting, Inc., Pegazus Sports Marketing & Consultants, Inc. and Pegazus Sport Tours LTD)

97.    Hammett repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 96, inclusive, as though fully set forth herein.

98.    In every agreement, there is an implied covenant of good faith and fair dealing which mandates that neither party to the agreement engage in conduct for the purpose of denying the other party the benefits of the agreement.

DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT

99.   David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, and Pegazus Sport Tours entered into agreements with Hammett, the terms of which are alleged above. Hammett performed all of the things he was required to do under those agreements. All conditions for David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, and Pegazus Sport Tours's performance had occurred.

100.   David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, and Pegazus Sport Tours unfairly interfered with Hammett's right to receive the benefits of the parties' contractual agreements, thus causing harm to Hammett.

101.   As a result of David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, and Pegazus Sport Tours's breach of the covenant of good faith and fair dealing, Hammett has been damaged in an amount of at least $2,941,381, was deprived of potential revenues from the sale of the tickets David Bunevacz, Joseph Bunevacz, Pegazus Consulting and/or Pegazus Consultants, and Pegazus Sport Tours failed to deliver and now faces lawsuits from some of his customers. The amount of lost revenue is approximately $1 million and the expenses Hammett will incur on the lawsuits he faces is unascertained at this time.

//
//
//
//
//
//
//
//
//
//
//
//

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

1

### PRAYER FOR RELIEF

2    Based upon the foregoing causes of action, Cross-Complainants Action Seating, Inc. and

3  Gene Hammett pray as follows:

4    1.    For entry of judgment in their favor and against Counter-Defendants David

5         Bunevacz, Joseph Buenvacz, Jessica Bunevacz, Pegazus Sports Marketing &

6         Consulting, Inc., Pegazus Sports Marketing & Consultants, Inc., Pegazus Sport

7         Tours LTD, Neil White and Mocra Limited;

8    2.    For compensatory damages according to proof;

9    3.    For exemplary damages against Counter-Defendants David Bunevacz, Joseph

10        Bunevacz, Pegazus Sports Marketing & Consulting, Inc., Pegazus Sports Marketing

11        & Consultants, Inc., Pegazus Sport Tours LTD, Neil White and Mocra according to

12        proof;

13    4.    For attorneys' fees, court costs and expenses and

14    5.    For such other and further relief as the Court may deem proper.

15

16  Dated: Novemeber 29, 2010            LAW OFFICES OF FILIPPO MARCHINO

17

18

19    By: _____

20        FILIPPO MARCHINO
          Attorney for Action Seating, Inc. and Gene
21        Hammett

22

23        JAMES R. MORIARTY
          Attorney for Action Seating, Inc. and Gene
24        Hammett

25

26

27

28

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel 213.223.2232 | Fax 213.226.4691

DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel. 213.223.2232 | Fax 213.226.4691

DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT

## DEMAND FOR JURY TRIAL

Cross-Complainants Action Seating, Inc. and Hammett demand a jury trial.

Dated: November 29, 2010                    LAW OFFICES OF FILIPPO MARCHINO

By: _____
FILIPPO MARCHINO
Attorney for Action Seating, Inc. and Gene
Hammett

_____
JAMES R. MORIARTY
Attorney for Action Seating, Inc. and Gene
Hammett

DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT

1

## PROOF OF SERVICE

2  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3          At the time of service, I was over 18 years of age and **not a party to this action**. I am
   employed in the County of Los Angeles, State of California. My business address is 633 W. 5th St,
4  Suite 2629, Los Angeles, CA 90071.

5          On November 30 , 2010, I served the following document(s) described as
   DEFENDANTS' THIRD AMENDED CROSS COMPLAINT on the interested parties in this
6  action as follows:

7  DOLL AMIR & ELEY LLP                          Attorney for Plaintiff
   MICHAEL M. AMIR                               DAVID BUNEVACZ, and PEGAZUS
8  1888 Century Park East, Suite 1106            SPORTS MARKETING & CONSULTANTS,
   Los Angeles, CA 90067                         INC.
9

10

11  [ ] **BY PERSONAL HAND DELIVERY SERVICE:** I enclosed the document(s) in a sealed envelope or package
    addressed to the persons at the addresses listed in the Service List and personally hand delivered it to the attorneys of
12  record for Defendants, at the above address.

13  [ ] **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses
    listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.
14  I am readily familiar with The Law Offices of Filippo Marchino's practice for collecting and processing
    correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is
15  deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage
    fully prepaid.
16

17  [ ] **BY COURIER - NEXT BUSINESS DAY DELIVERY:** I enclosed the document(s) in a sealed envelope or
    package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection by a
18  private courier, following our ordinary business practices. I am readily familiar with The Law Offices of Filippo
    Marchino's practice for collecting and processing correspondence for private courier. On the same day that the
19  correspondence is placed for collection and shipping, it is picked up, in the ordinary course of business, by either UPS
    or FedEx, in a sealed envelope with rate fully prepaid.
20

21  [ ] **BY FACSIMILE:** I faxed a true and correct copy of said document to the FAX number indicated, on or before
    5:00 pm. The transmission was reported as complete and without error by a report properly issued by the transmitting
    fax.
22

23          I declare under penalty of perjury under the laws of the State of California that the
    foregoing is true and correct.

24          Executed on November 30 , 2010, at Los Angeles, California.

25

26

27                                              _____
                                                Declarant
28

LAW OFFICES OF FILIPPO MARCHINO
633 W. 5th Street, Suite 2600
Los Angeles, California 90071
Tel: 213.223.2232 | Fax 213.226.4691

2
DEFENDANTS' THIRD AMENDED CROSS-COMPLAINT